NATIONAL LIFE INSURANCE COMPANY *vs.* ELIZABETH H. PINGREY & another.

Suffolk.    Jan. 22. — March 31, 1886.    DEVENS & GARDNER, JJ., absent.

If a life insurance company has issued a policy on the life of A. payable to B., has allowed A. to surrender the policy without the consent of B., and has issued a new policy to A. payable to C., it cannot, on the death of A., maintain a bill of interpleader against B. and C. to determine its liability.

BILL OF INTERPLEADER, against Elizabeth H. Pingrey and Cara L. Pingrey, to determine the respective rights of the defendants under two policies of insurance issued by the plaintiff. The case was heard by *W. Allen*, J., and reported for the consideration of the full court, in substance as follows:

The plaintiff, on May 25, 1874, issued its policy of insurance upon the life of Franklin A. Pingrey, on his application, he at that time being twenty-one years of age, containing the following clauses:

"As soon as the premiums paid, together with such other sums as he may choose to pay, improved annually at the average rate of interest received by the company after deducting *pro rata* expenses and losses, shall amount to the sum insured, the company agrees to pay to Franklin A. Pingrey the amount of three thousand dollars.

"In case of prior death, the said company do hereby promise to and agree with the assured, his executors, administrators, and assigns, well and truly to pay at their office the said sum insured to his mother, Elizabeth H. Pingrey, within ninety days after due notice and proof of the death of the said Franklin A. Pingrey, during the continuance and before the termination of this policy."

On January 25, 1882, Franklin A. Pingrey surrendered said policy to the plaintiff, who, at his request, issued to him another policy, containing similar provisions to those set forth above, except that this policy was payable to Cara L. Pingrey, the wife of said Franklin A., instead of to said Elizabeth H.

No new application for insurance was made by Franklin A. Pingrey, but, upon the surrender of the first policy for cancellation, the second policy was issued, with the following indorsement upon it: "Original Pol. No. 9372 was issued May 25, 1874, of which this is a continuation and is entitled to all its benefits." Elizabeth H. Pingrey never consented to the surrender of the first policy.

All the premiums on both policies were paid by Franklin A. Pingrey, the assured, when they came due, his mother, said Elizabeth H. Pingrey, and his sister together furnishing him with all, or nearly all, the money necessary to pay the first premium on the first policy; but it did not appear how much of the money for said premium was furnished by his mother and how much by his sister. It did not appear that any other sums besides the premiums were paid upon either of said policies.

Some time after taking out the first policy, Franklin A. informed his mother that he had taken it out, but she never saw it until about two years after the time of its issue, when one

day he took it from the box where he had always kept it, as he was putting away other papers, and, holding it up, folded, told her that it was the policy; she never read the policy or knew its provisions, except that she understood from her son that he had taken out a policy for her benefit.

The insured always kept possession of said original policy until he surrendered it to the company to be cancelled as aforesaid, and he never delivered it to his mother.

On February 26, 1880, the assured married Cara L. Pingrey, and, on September 30, 1882, he died without issue.

At the time when the first policy was applied for, the assured, being then just twenty-one years of age, was living at home with his father and mother, with whom he had lived up to that time, and continued to live until his death, the family at that time consisting of his father, mother, sister, and himself. His father was an invalid, and so continued until his death, which was after the death of the assured, and the household expenses were paid principally by his mother, who took boarders. The assured paid no board before May, 1876; from that time until October, 1880, he paid three dollars per week to his mother; and after October, 1880, until his death, he paid her eight dollars per week.

From the time of his marriage, on February 26, 1880, until his death, his wife lived with him and his parents, assisted in the affairs of the house, and lived as one of the family.

The first policy was obtained, after consultation between the assured and the other members of the family, with the intention of giving his mother the benefit thereof, he at that time being unmarried.

*H. G. Nichols*, for Cara L. Pingrey.

*R. Stone*, for Elizabeth H. Pingrey.

C. ALLEN, J. The questions arising between the plaintiff and the different defendants cannot all be tried in an issue between the two defendants alone. The mother claims to be entitled under the first policy. The widow claims under the second policy. By issuing the two policies, the plaintiff has exposed itself to both of these claims, and must meet them as best it may. The difficulty of maintaining the bill of interpleader is not technical, but fundamental. In this form of proceeding, we cannot

inquire whether the plaintiff has incurred a double liability. That result is possible. The plaintiff ought to be in a position to be heard upon the question; but on a bill of interpleader, which assumes that the plaintiff is merely a stakeholder, the plaintiff cannot be heard. *Houghton* v. *Kendall*, 7 Allen, 72. A plaintiff cannot have an order that the defendants interplead, when one important question to be tried is, whether, by reason of his own act, he is under a liability to each of them. *Cochrane* v. *O'Brien*, 2 J. & Lat. 380. *Desborough* v. *Harris*, 5 De G., M. & G. 439. *Baker* v. *Bank of Australasia*, 1 C. B. (N. S.) 515. See also Story Eq. Pl. § 291 *& seq.;* 3 Pom. Eq. § 1320 *& seq.*                                      *Bill dismissed.*